IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

J.D. ADKINS, et al.,

      Plaintiffs,

v.            CIVIL ACTION NO. 3:05-0052

M&G POLYMERS USA, LLC, et al.,

      Defendants.

**MEMORANDUM OPINION AND ORDER**

On January 18, 2005, Defendants filed a Notice of Removal. Plaintiffs moved for remand arguing that this Court lacks federal question jurisdiction as asserted by Defendants (Doc. 14, 15). For the reasons that follow, the Court **GRANTS** Plaintiffs' motion for remand, and therefore, **REMANDS** this case to the state court.

**I. Background**

Plaintiffs filed this action in the Circuit Court of Mason County on December 17, 2004. Plaintiffs filed both a first and second amended complaint on December 28, 2004. Plaintiffs allege that they were discriminated against on the basis of their age in violation of the West Virginia Human Rights Act (WVHRA), W. VA. CODE § 5-1-11 *et seq*. (2002). Specifically, Plaintiffs claim that their layoffs were the result of both disparate treatment and disparate impact age discrimination. In their second amended complaint, Plaintiffs allege that Defendants previously decided layoff decisions in part by seniority. *See* Pl. Sec. Am. Compl. at ¶¶ 4, 6. Plaintiffs further allege that prior to their layoffs Defendants stated that they wanted to freely pick the remaining employees, and commented that "older employees were more difficult to train and mold into new work." *Id.* at ¶

18. To this end, Plaintiffs claim that the Defendants unilaterally changed the layoff procedure to an evaluation process. *Id.* at ¶ 9. Plaintiffs allege that this evaluation process is a sham and enabled Defendants to lay off its older workers. *Id.* at ¶ 19. The Plaintiffs do not mention the existence of a collective bargaining agreement (CBA) in the amended complaint.

Arguing that Plaintiffs are subject to a CBA, Defendants timely filed a notice of removal based upon federal question and pre-emption under Section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185. Defendants claim that Plaintiffs are referring to previous and current CBAs when discussing the layoff policies. They argue that the Plaintiffs are contesting the application of the layoff procedures, as well as how to interpret, weigh and evaluate various factors mandated by the CBA. For example, Plaintiffs allege that the evaluation process was intended to lay off only older workers and denied them positions for which they were "qualified by education, experience and work background." *See* Pl. Sec. Am. Compl. at ¶ 25. Defendants claim that those qualifications are given specific weight under the CBA, and therefore, in order to assess Plaintiffs' claims, the CBA must be interpreted.

Plaintiffs moved for remand. In their motion to remand, Plaintiffs argue that this Court lacks federal question jurisdiction for two reasons. First, Plaintiffs contend that no CBA was in effect at the time of their layoff upon which to base § 301 jurisdiction. They argue that, upon reaching an impasse in negotiations, the company unilaterally implemented portions of its last offer. According to Plaintiffs, a unilaterally implemented final offer does not give rise to an enforceable contract under the LMRA. Even if an enforceable CBA existed, the Plaintiffs argue that this Court lacks § 301 jurisdiction because their claims under the WVHRA are not pre-empted since resolution of state

discrimination claims involve determination of motivation rather than the interpretation or application of the CBA.

## II.   Standard of Review

An action may be removed to a federal district court if it is one over which the district court would have original jurisdiction. *See* 28 U.S.C. § 1441(b). District courts have original jurisdiction of actions arising under the laws of the United States. *See* 28 U.S.C. § 1331. The "well-pleaded complaint rule" governs whether an action arises under the laws of the United States for purposes of section 1331. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). A district court will have original jurisdiction if a "federal question is presented on the face of the plaintiff's properly pleaded complaint." *Id.* However, courts recognize a "complete pre-emption corollary" where the "pre-emptive force of a [federal] statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Id.* (citing *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987)). In removal cases, "the defendant bears the burden of showing federal jurisdiction has been invoked properly." *McCoy v. Erie Ins. Co.*, 147 F. Supp.2d 481, 486 (S.D.W. Va. 2001) (citing *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994).

## III.   Discussion

**A.**   **Existence of a CBA**

As an initial matter, the parties disagree as to whether any contract or agreement existed at the time of Plaintiffs' layoffs which invokes § 301 jurisdiction. Both parties agree upon the following facts. The previous CBA expired on November 6, 2003. The Union and the company engaged in extensive negotiations until an impasse was reached. Upon declaring an impasse,

Defendant company M&G Polymer implemented its last, best and final offer in or about February 2004. The Plaintiffs and other union represented employees continued working. Plaintiffs were laid off in or about April 2004. Plaintiffs indicate in their reply to Defendants' response in opposition to remand that after the unilateral implementation, negotiations continued and a new CBA was ultimately agreed upon in or about September 2005.

With those agreed upon facts, this Court finds that Plaintiffs were working under an interim agreement subject to § 301. The employer did not violate the NLRA by implementing its final offer upon impasse. The Fourth Circuit has found that "[w]hen the parties are thus without a collective bargaining agreement, having made good faith efforts to reach one, the employer may impose its own terms and conditions of employment unilaterally." *AMF Bowling Co., Inc. v. N.L.R.B.*, 63 F.3d 1293, 1299 (4th Cir. 1995). Plaintiffs continued working, and did not reject the employer's final offer. *See Cumberland Typographical Union No. 244 v. Times and Alleganian Co.,* 943 F.2d 401, 405-406 (4th Cir. 1991)(asserting § 301 jurisdiction on facts that "[w]hen presented with the Company's last offer, the Union employees did not expressly reject it, but continued to perform their duties..."); see also *id.* for the proposition that "employer implementation of a last and final offer is, by itself, insufficient to invoke Section 301 jurisdiction '...absent some manifestation of acceptance of an offer sufficient to create a contract'" (citing *Int'l Union, United Mine Workers v. Big Horn Coal Co.*, 916 F.2d 1499 (10th Cir.1990).

In this case, Plaintiffs admit that they continued working after the Defendant M&G unilaterally implemented the agreement in this case involving the layoff procedure. Not only did the individual employees continue working under the implemented agreement, but the actions of

the Union suggest acceptance of the implemented agreement. As argued by Defendants, the Union has filed grievances on behalf of several of the named Plaintiffs alleging age discrimination. The Union also filed grievances alleging violations of the implemented agreement. The conduct of the Union and the Union-represented employees shows an intent to accept the interim implemented agreement. As said by other courts, this Court has no "conceptual difficulty in understanding that an employment arrangement that was unacceptable as a permanent, formal agreement might still be acceptable as a temporary, stop-gap measure." *United Paper Workers Int'l Union v. Champion Int'l Corp.*, 81 F.3d 798, 857(8th Cir. 1996). Section 301 does not only cover formal CBAs, but also encompasses an "agreement between employers and labor organizations significant to the maintenance of labor peace between them." *Retail Clerks Int'l Ass'n v. Lyons Dry Goods, Inc.*, 369 U.S. 17, 28 (1961); *see Amalgamated Clothing & Textile Workers Union, AFL-CIO v. Facetglas, Inc.*, 845 F.2d 1250, 1253 (4th Cir. 1988). Therefore, this Court finds a contract existed between "an employer and a labor organization" for purposes of imposing § 301 jurisdiction.

**B.     § 301 Pre-emption**

In their motion, Defendants argue that this Court has jurisdiction over Plaintiffs' amended complaint pursuant to § 301 of the LMRA. Section 301 of the LMRA provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). The underlying purpose of pre-emption under § 301 is to create a uniform body of law to resolve disputes in interpreting collective bargaining agreements. *McCormick v.*

*AT&T Techns., Inc.*, 934 F.2d 531, 535 (4th Cir. 1991).  As the Fourth Circuit stated in *McCormick*, "the pre-emptive force of § 301 is so powerful as to displace entirely any state cause of action 'for violation of contracts between an employer and a labor organization.'" 934 F.2d at 534 (quoting *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 23 (1983)) (additional quotation marks omitted).  The test to determine whether a state law cause of action is pre-empted by § 301 is "not whether the source of a cause of action is state law, but whether resolution of the cause of action requires interpretation of a collective bargaining agreement." *Id.* at 535; *see also Lingle v. Norge Div. Of Magic Chef, Inc.*, 486 U.S. 399 (1988) (holding that "state law is pre-empted by § 301 . . . only if such application requires the interpretation of a collective-bargaining agreement").

      Deciding when a state law claim is pre-empted by § 301 is not always an easy task.  In order to determine whether the state law claims should be pre-empted by § 301, a court must analyze the elements that a plaintiff must prove to establish a prima facie case.  *See id*. at 406; *see also Salmons v. Prudential Ins. Co.*, 48 F.Supp.2d 620, 624 (S.D.W. Va. 1999)(citing *McCormick*, 934 F.2d at 535). If resolution of the state law claim necessarily requires interpretation of the collective bargaining agreement or if resolution is "inextricably intertwined with consideration of the terms of the labor contract," then the claim is pre-empted by § 301.  *See Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211-213 (1985).  However, "the bare fact that a collective bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished."  *Livadas v. Bradshaw*, 512 U.S. 107, 124 (1994).  Section 301 does not pre-empt "nonnegotiable rights conferred on individual employees as a matter of state law." *Id.* at 123.  Section 301 does pre-empt "state-law rights and obligations that

do not exist independently of private agreements, and that as a result can be waived or altered by agreement of private parties." *Allis-Chalmers Corp.*, 471 U.S. at 213. With these principles in mind, the Court will determine if either of Plaintiffs' claims are pre-empted.

### 1. Disparate Treatment Claim

In order to establish a prima facie case of age discrimination under the WVHRA, Plaintiffs must demonstrate that: (1) they are of the age forty or above; (2) the Defendants made an adverse employment decision concerning plaintiffs; and (3) but for their age, the Defendants would not have taken the adverse employment action. *See Smith v. Sears, Roebuck and Co.*, 516 S.E.2d 275, 279 (W. Va. 1999)(citing *Conaway v. Eastern Assoc. Coal Corp.*, 358 S.E.2d 423 (W. Va. 1986)). The question becomes whether resolution of these elements requires an interpretation of the implemented agreement. If so, then the claim is pre-empted.

This Court has previously held that a claim for age discrimination under the WVHRA is not pre-empted by § 301. *See Harless v. CSX Hotels, Inc.*, 265 F.Supp.2d 640 (S.D.W. Va.), *aff'd*, 389 F.3d 444 (4th Cir. 2004). In *Harless*, the plaintiff filed a multiple count complaint including a claim for unlawful discharge. *Id.* at 644. The plaintiff sought to amend this count to specifically state a claim for disability and age discrimination under the WVHRA. *Id.* at 647-648. Defendant argued that the claim would be pre-empted under § 301 because it will involve, in part, interpretation of the absenteeism policy under the CBA. *Id.* This Court disagreed with the defendant, and permitted the amendment. *Id.* at 649-650. To succeed on her claim of wrongful discharge, plaintiff had to show that her age and disability were the motivating force behind her discharge. *Id.* at 648. The Court found that plaintiff's claim of discrimination under the WVHRA "presents purely factual questions about the underlying motivation and conduct" of the defendant.

*Id.* at 649. This was so even if the defendant argued that it properly discharged plaintiff under the terms of the CBA. *Id.* As stated by the Court, "the fact that the collective bargaining agreement may be referred to or consulted during the decision making process does not warrant a finding in favor of § 301 preemption." *Id.*

The *Harless* decision relied upon the Fourth Circuit's decision in *Owen v. Carpenters' District Council*, 161 F.3d 767 (4th Cir. 1998). In *Owen,* the plaintiff filed a claim in state court alleging that she was fired because she had rebuffed her supervisor's advances and complained of sexual harassment. *Id.* at 770. The defendant removed the case to federal court asserting that the claim would require an interpretation of the just cause provision of a CBA, and therefore, was pre-empted under § 301. *Id.* In analyzing whether pre-emption was appropriate, the Fourth Circuit quoted the Supreme Court's decision in *Livadas*, which held that nonnegotiable state rights are not pre-empted. *Id.* at 773 (quoting *Livadas*, 512 U.S. at 124). The court explained that nonnegotiable state rights are not pre-empted because § 301 is designed to pre-empt only those actions that require an interpretation of the CBA. *Id.* Section 301 "says nothing about the substantive rights a State may provide to workers when adjudication of those rights does not depend upon interpretation of such agreements." *Id.* (citations omitted). Thus, the Fourth Circuit stated, "whether a state cause of action may proceed in state court depends upon 'the legal character of a claim, as independent of rights under the collective bargaining agreement, (and not whether a grievance arising from precisely the same set of facts could be pursued).'" *Id.* The Fourth Circuit examined the elements of a claim for wrongful discharge under Maryland law, and concluded that the claim would not require an interpretation of a CBA even though the defendant would likely argue that plaintiff was discharged in compliance with the just cause provision of the

CBA. *Id.* at 775-776. Accordingly, plaintiff's claim was not pre-empted, and remand was proper. *Id.* at 776.

The Fourth Circuit has also held that state law claims of handicap discrimination, retaliation, and intentional infliction of emotional distress are not pre-empted by § 301. *See Martin v. Marietta Corp. v. Maryland Commission on Human Relations*, 38 F.3d 1392 (4th Cir. 1994)(state claims of handicap discrimination and retaliation); *Jackson v. Kimel*, 992 F.2d 1318 (4th Cir. 1993)(state tort claim of intentional infliction of emotional distress). District courts within this district have consistently held that state law claims of discrimination under the WVHRA are not pre-empted. *See, e.g., Blair v. Schott Scientific Glass Co.*, 945 F.Supp. 123 (S.D.W. Va. 1996)(sex discrimination claim); *Mixer v. M.K. Ferguson Co.*, 17 F.Supp.2d 569 (S.D.W. Va. 1998)(age discrimination claim); *Knox v. Wheeling-Pittsburgh Steel Corp.*, 899 F.Supp. 1529 (N.D.W. Va. 1995)(sex discrimination claim).

Despite this case law, Defendants argue that Plaintiffs' claims in this case are pre-empted. They argue that throughout the amended complaint, the Plaintiffs interpret and implicate substantive sections of the CBA as part of their claims. In order to resolve Plaintiffs allegations, Defendants argue that these sections must be interpreted by the Court. Therefore, the Defendants suggest that the current case is similar to the Fourth Circuit's opinions in *McCormick v. AT&T Techs., Inc.*, 934 F.2d 531 (4th Cir. 1991), *Foy v. Giant Food, Inc.*, 298 F.3d 284 (4th Cir. 2002), and *Davis v. Bell Atlantic-West Virginia, Inc.*, 110 F.3d 245 (4th Cir. 1997). However, for the same reasons as discussed by the Court in *Harless*, those cases are distinguishable from the present case. None of those cases allege violations of the WVHRA. Instead, the plaintiffs allege claims under state law for violations of the CBA. *See McCormick*, 943 F.2d at 537 (claim for

intentional infliction of emotional distress pre-empted because employer owed no duty of care to plaintiff under CBA, so did not violate state law when disposed of plaintiff's items upon discharge); *Foy*, 298 F.3d at 288 (claim for intentional infliction of emotional distress pre-empted because employer's discharge of plaintiff was authorized by CBA and so could not constitute extreme and outrageous conduct); *Davis*, 110 F.3d at 249 (claim for wrongful discharge for violations of implied duties of good faith and fair dealing pre-empted). The claims were pre-empted because the "duties imposed and rights established through the state tort...derive from the rights and obligations as established by the contract." *See Allis-Chalmers Corp.*, 471 U.S. 202, 213 (1985).

This Court in *Harless* stated that *McCormick* and *Foy* are different from a claim under the WVHRA because the claims of those plaintiffs allege that the defendant committed the wrongful state acts by failing to abide by the terms of the CBA. *Harless*, 265 F.Supp.2d at 653. *Davis* falls within this same category of cases. Contrary to those cases, the Plaintiffs in the instant case allege that the Defendants' conduct in permanently laying them off was motivated by their age. They do not claim that the Defendants failed to implement the layoff policy in accordance with the CBA. As stated in *Harless*, "claims based upon age and disability discrimination in violation of the West Virginia Human Rights Act are substantively different than the claims made in *McCormick* and *Foy* because discrimination claims are wrong under state law regardless of the terms [of the] collective bargaining agreement." *Id*.

As stated above, Plaintiffs' claims are not pre-empted just because the CBA may be referred to or consulted in the litigation. In this case, the Defendants will likely offer provisions of the CBA as non-discriminatory reasons for its actions. However, the question for purposes of

this motion is whether the prima facie case involves interpretation of the CBA. In this case, resolution of Plaintiffs' claim for disparate treatment discrimination will depend upon the motivation and conduct of Defendants in deciding to terminate their employment. Therefore, the claim is not pre-empted under § 301.

### 2.     **Disparate Impact Claim**

Applying the same standards established for determining § 301 pre-emption is more difficult when analyzing the Plaintiffs' disparate impact claim. The West Virginia Supreme Court has held that a plaintiff who is unable to proceed on a disparate treatment theory for a claim under the WVHRA may proceed under a disparate impact theory. *See Guyan Valley Hospital, Inc. v. West Virginia Human Rights Comm'n*, 382 S.E.2d 88 (W. Va. 1989). In order to establish a prima facie case of disparate impact discrimination under the WVHRA, Plaintiffs must demonstrate that: (1) the employer used a particular employment practice or policy; and (2) such practice or policy has a disparate impact on those above the age of forty. *See West Virginia University/West Virginia Bd. of Regents v. Decker*, 447 S.E.2d 259, 266 (W. Va. 1996). Unlike disparate treatment analysis, which turns on discriminatory motive, a claim for disparate impact turns on discriminatory effect. *Id.* at 264. By asserting a disparate impact claim, "a plaintiff may prove that a facially neutral employment practice actually discriminates against a particular class based upon the disproportionate negative impact on that particular class." *Pittsnogle v. West Virginia Dept. of Transp.*, 605 S.E.2d 796, 800 (W. Va. 2004). To establish a prima facie case of disparate impact discrimination, plaintiffs most often use statistics. *Decker,* 447 S.E.2d at 266 (citing *Dobson v. Eastern Assoc. Coal Corp.*, 422 S.E.2d 494, 497 (1992)). As with the disparate

treatment claim, the question becomes whether resolution of these elements requires an interpretation of the implemented agreement.

In their memoranda, Plaintiffs make no distinction between the pre-emption analysis of the disparate impact claim and the pre-emption analysis of the disparate treatment claim, essentially arguing that both are nonnegotiable state rights under the WVHRA. Defendants argue that in order to prove the elements of the disparate impact claim, Plaintiffs must identify the factors relating to the layoff procedure contained in the CBA, which involves the interpretation of the CBA. They argue that neither the subjective intent nor the motivation of Defendants plays a part in this claim. Defendants do not cite any case law to support their arguments.

Unlike disparate treatment claims under the WVHRA, the Fourth Circuit and its district courts have not addressed § 301 pre-emption of disparate impact claims. In fact, research revealed that only federal courts within the Ninth Circuit have published opinions discussing the issue of § 301 pre-emption of state disparate impact claims. *Cf. Acree v. Tyson Bearing Co, Inc.*, 128 Fed.Appx. 419, 423 n.7 (6th Cir. 2005)(mentioning in a footnote that the district court decided that the plaintiff's state law claim for disparate impact was not pre-empted under § 301).

In *Beale v. GTE California*, plaintiffs brought state law claims alleging discrimination on the basis of gender, age, race, and national origin, arising from layoffs conducted by the employer. 999 F.Supp. 1312, 1315-1316 (C.D. Cal. 1996). The defendants argued that it followed the layoff procedure as set forth in the CBA, and therefore, the claims are pre-empted. *Id.* at 1319. The plaintiffs allege that the defendants wanted to lay off as many female minority employees over the age of forty as possible. *Id.* at 1316. To do so, plaintiffs claim that the defendants structured the layoffs to reach this goal by eliminating from the workforce the frame

-12-

maintainers classification. *Id.* Workers in this classification were predominantly female and over the age of forty. *Id.* In response, defendants argued that technological changes and budgetary concerns made it necessary to reduce the frame maintainers classification. *Id.* at 1315.

In discussing whether the claim was pre-empted, the *Beale* court first recognized that the Ninth Circuit has held that § 301 does not pre-empt actions under state anti-discrimination statutes "because the right [not to be discriminated against] is defined and enforced under state law without reference to the terms of any collective bargaining agreement." *Id.* at 1318 (citing *Chmiel v. Beverly Wilshire Hotel Co.*, 873 F.2d 1282, 1286 (9th Cir. 1989)). The court then turned to the plaintiffs' complaint. Defendants maintained that they followed the layoff procedures as provided by the CBA, so pre-emption applies as § 301 is the exclusive means to determine whether it complied with the CBA. *Id.* at 1319. In response, the court stated that the defendants, while correct, misconstrued the plaintiffs' complaint. *Id.* The court emphasized that plaintiffs were claiming that, first, the employer made discriminatory decisions about which employees to terminate. *Id.* It was not until after making those discriminatory decisions that the employer developed, and then followed, the layoff procedures in the CBA. *Id.* Therefore, the court held that the state claim for disparate impact was not pre-empted because it was not inextricably intertwined with the CBA. *Id.*

Reaching, in part, the same conclusion, another case decided by the same court also found that a plaintiff's state disparate impact claim was not pre-empted. *Madison v. Motion Picture Set Painters and Sign Writers Local 729*, 132 F.Supp.2d 1244, 1253 (C.D. Cal. 2000). In this case, the plaintiff brought claims against his union alleging that it discriminated against its African-

American members by negotiating a discriminatory hiring procedure in the CBA, that disparately impacts African-Americans. *Id.* at 1248. He also had a claim of discrimination against the union for filing a meritless grievances against his employer. *Id.* The defendant removed to federal court claiming § 301 pre-emption. *Id.* The issue was before the court on plaintiff's motion to remand. *Id.*

The court turned first to the plaintiff's claim of discrimination in the hiring procedures. The court noted that the parties did not dispute the fact that the hiring procedures at the center of the complaint are found in the CBA. *Id.* at 1252. In this case, the court said that the parties are not necessarily contesting the meaning of the hiring provisions. *Id.* As an example, the court said that the plaintiff is not suggesting that the defendant incorrectly interpreted the agreement. *Id.* Rather, the CBA itself permits or facilitates the disparate treatment of African-Americans. *Id.* Because "there is no dispute respecting the meaning of the hiring provisions," interpretation of the provision is not an issue. *Id.* at 1253. Therefore, the disparate impact claim was not pre-pre-empted. *Id.* The court ultimately found that this claim was pre-empted by the federal duty of fair representation, and denied remand. *Id.* at 1258-1259.

Several principles emerge from these cases. In both cases, the plaintiffs were not disputing that the defendants correctly implemented the policy or procedure as outlined in the CBA. The plaintiffs' allegations were that the policy or procedure itself facilitates the discrimination. Therefore, the courts did not need to interpret the CBAs under § 301. Also, in the *Beale* case, the court construed the complaint as alleging that the employer first decided that it wanted to discontinue the employment of a certain class of people, and then it created the policy in the CBA to reach this goal. In that situation, the court determined that no interpretation of the

-14-

CBA under § 301 was necessary. Although these decisions are not binding on this Court, as the only published decisions directly on point, they are both helpful and persuasive.

Turning to the present case, Plaintiffs do not dispute that they were subject to layoff by the terms of Defendants' evaluation procedure. Although they did not reference by name the CBA within the amended complaint, a fair reading indicates that they are referring to the evaluation procedure in the CBA. The Plaintiffs do not allege that they were discriminated against because the evaluation procedure was conducted improperly. Instead, they argue that the Defendants decided to get rid of their older workers. To reach this goal, Defendants replaced the layoff procedure which centered upon seniority and implemented a new evaluation procedure that considered multiple factors. Plaintiffs maintain that the new procedure was a sham designed by Defendants to get rid of older workers. Plaintiffs' claim exists separately from the question of whether Defendants properly implemented the evaluation process. Although the evaluation process in the CBA will surely be consulted in this case, the claim involves the effect of that process on a protected class of persons under the WVHRA, and not an interpretation of the contract provisions to determine whether the Defendants properly implemented the process. As this Court has previously held, "the fact that the collective bargaining agreement may be referred to or consulted during the decision making process does not warrant a finding in favor of § 301 preemption." *Harless*, 265 F.Supp.2d 640, 649.

To establish a prima facie case, Plaintiffs must demonstrate that the employer used a particular procedure, and that the procedure disparately impacted those over forty. Neither of the parties dispute the fact that an evaluation procedure existed to determine layoffs. The dispute is over whether the procedure was discriminatory. Plaintiffs must offer statistics showing the

disproportionate number of workers over forty laid off under the policy. This does not involve interpretation of any provision of the CBA. Plaintiffs' mentioning the evaluation procedure under the CBA as the allegedly discriminatory procedure is not enough to warrant pre-emption. This showing, and not any interpretation of the evaluation procedure, will determine if Plaintiffs can establish a prima facie case for disparate impact discrimination.

Not only do workers have the right to be free from intentional discrimination under the WVHRA, but they also have the right to be free from unintentional discrimination. These state rights exist independent of the CBA, and resolution of the claim is not so intertwined with consideration of the labor contract to warrant pre-emption. The purpose of § 301 pre-emption, to create a uniform body of law interpreting labor contracts, is not implicated in this case as it involves largely factual disputes over discriminatory motive. Therefore, like Plaintiffs' disparate treatment claim under the WVHRA, the Plaintiffs' claim for disparate impact is not pre-empted by § 301.

## IV. Conclusion

For the foregoing reasons, the Court finds that Plaintiffs' discrimination claims under the WVHRA are not pre-empted by Section 301 of the Labor Management Relations Act. Accordingly, the Court lacks jurisdiction over this case, and the removal was improper. Therefore, the Court **GRANTS** Plaintiffs' motion to remand. The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER: March 13, 2006

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE